# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:17CV-00129-JHM**

**KEVIN K. TODD**                                                   **PLAINTIFF**

**V.**

**COVENANT SECURITY SERVICES, INC.**                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Covenant Security Services, Inc., for summary judgment [DN 21]. Fully briefed, this matter is ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of

1

a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Kevin Todd, was employed by Defendant, Covenant Security Services, LTD (hereinafter "Covenant"), as a security officer from April 17, 2009 until October 6, 2015. Throughout his employment, Todd provided certain security services to Covenant's customer, Kimberly Clark, at its Owensboro, Kentucky facility. Todd was assigned to the second shift and his work hours were Thursday through Sunday from 3:00 p.m. to 11:00 p.m. Todd testified that his job was more like a clerk job, and his main responsibilities were to operate or man the over-the-road Truck Desk and the Shuttle Desk and paperwork related thereto. Todd received favorable employment evaluations from Covenant.

Pursuant to the written job description for the security officer position at the Kimberly Clark facility in place at the time Todd was hired, the physical requirements of Todd's position included an ability "to walk several miles per day." Covenant maintains that one of the key job duties of security officers at the Kimberly Clark plant on second and third shift was the performance of patrol rounds. Covenant represents that a patrol round refers to an officer's driving and/or walking around and throughout the Kimberly Clark facility, including the exterior and parking lots, to identify and report any security and/or safety hazards. Todd testified that security officers did patrol rounds early in his employment with Covenant, but the patrol rounds were not performed during the majority of his employment. Todd testified that he voluntarily performed patrol rounds during those years and was permitted to use his own vehicle or a Kimberly Clark

2

vehicle during the exterior facility and parking lot rounds. In 2013, Plaintiff suffered a disabling impairment and notified Covenant that he had a physical issue related to his back and was unable to work more than 32 hours per week. Covenant adjusted his schedule.

In January of 2015, an issue arose with Todd's delay in turning in bills of lading during his shift. On January 15, 2015, Todd informed his site supervisor, Lisa Adkisson, of his limitation regarding walking due to chronic pain. She verbally suggested that he take breaks. On February 26, 2015, Todd's immediate supervisor, Ryan Stanley, and the site supervisor, Adkisson, sent an email to the security officers, including Todd. The email read as follows:

> Hello, everyone. There is a program that we are implementing now that should have been in place before the current management. It is called, S.A.F.E., and it stands for *"Safety Awareness for Everyone"*. To start, our patrol rounds per week are determined by both Covenant and KC. They will be changing to this schedule, effective immediately. Monday through Friday; 2nd shift will now be 2 rounds per shift and 3rd shift will be 4 rounds per shift. Saturday through Sunday; 1st shift will be 1 round per shift, 2nd shift will be 1 round per shift, and 3rd shift will be 2 rounds per shift. You must use both patrol sheets on your rounds! These sheets will be turned in and checked monthly by our account manager (Len Welham). If you have any questions feel free to ask. Thank you, Lisa and Ryan.

(Feb. 26, 2015, Stanley Email.)

Based on this communication, on March 5, 2015, Todd sent an email to Adkisson requesting a reasonable accommodation be made "for the additional job responsibilities" of mandatory patrol rounds each shift. Specifically, Todd requested "some type of mobility device for [him] to make rounds inside the plant" and "an exception[] to allow [his] personal vehicle beyond the gate to deliver [bill of ladings] to RF." (March 5, 2015, Todd Email.) On March 6, 2015, Adkisson responded to Todd that she had forwarded the email to Len Welham, Covenant Account Manager. (March 6, 2015, Adkisson email.) Covenant indicates that it made a temporary accommodation in response to Todd's request in March by temporarily excusing him from

3

performing the duty of a patrol round during his shift. The record reflects that the Terry Bowden, the other security officer on second shift, voluntarily handled the walking patrols from March 5, 2015 to at least September of 2015. Covenant represents that Bowden decided that he no longer wished to perform all the walking patrols.

In May of 2015, Todd's physician, Dr. Brian Chaney, completed the "Medical Inquiry for Reasonable Accommodation under the Americans with Disabilities Act (1990)" at Covenant's request which Todd submitted to Covenant. Dr. Chaney indicated that Todd suffered from a chronic low and thoracic back pain, that such condition is a permanent, long-term physical impairment which substantially limited Todd's ability to walk, but that he was able to work. In July of 2015, Covenant modified the written job description for security officers to include "[r]outine vehicle patrol of the facility parking lots, and exterior patrols of the facility" and "routine internal foot patrols of facility." (July 16, 2015, Job Description.)

Adkisson and Ashley Dennis, Human Resource Officer for Covenant, requested to meet with Todd on October 6, 2015. At that meeting, Todd again requested a reasonable accommodation to enable him to complete patrol rounds, including that (1) he would handle the heavier traffic volume desk and his co-worker would handle the lower traffic volume desk and the patrol rounds; (2) Covenant provide him with a mobility device; (3) Todd's supervisor, Ryan Stanley, perform the patrol rounds on the second shift as he volunteered to do; and (4) Todd be permitted to use his own vehicle or drive a Covenant vehicle to do the patrol rounds outside of the facility. Todd represents that Adkisson and Dennis denied the accommodations, advised Todd that he could not perform the job under the new requirements, and terminated Todd's employment with the company. Covenant represents that no reasonable accommodations were identified that would have allowed Todd to perform all of the essential functions of his security officer position

as required by his shift assignment. Todd represents that he offered to stay until the employer hired someone to replace him, but he was informed that Covenant had already hired his replacement, a 22-year-old male.

On September 1, 2017, Todd filed this current action against Covenant in the Daviess Circuit Court alleging claims of disability-based discrimination pursuant to the Americans with Disabilities Act and the Kentucky Civil Rights Act, age discrimination pursuant to the Age Discrimination in Employment Act, and retaliation. On September 27, 2017, Covenant removed the action from the Daviess Circuit Court to the Western District of Kentucky. Covenant now moves for summary judgment on the claims.

### III. DISCUSSION

#### A. Disability Discrimination

Todd alleges that Covenant violated the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA") by failing to provide him with a reasonable accommodation for his disability and by failing to engage in the "interactive process" necessary to assess the availability of a reasonable accommodation. Covenant moves for summary judgment arguing that its termination of Todd's employment did not violate the ADA or the KCRA. Covenant maintains that Todd cannot demonstrate that he was a qualified individual with a disability because he was unable to perform all of the essential functions of his position as security officer, specifically patrol rounds. Further, Covenant argues it engaged in the interactive process with Todd required by both the ADA and the KCRA to try to determine if there was some reasonable accommodation that would have allowed him to perform all of the essential functions of his job, but there was no reasonable accommodation available.

Under the ADA and the KCRA, an employer cannot discriminate against a qualified

individual on the basis of disability in regard to the terms, conditions, privileges, or termination of employment. 42 U.S.C. § 12112(a); KRS § 344.040(a)(1). Because the language of the KCRA mirrors that of the ADA, the Court analyzes both claims under the ADA framework. Hargett v. Jefferson Cty. Bd. of Educ., 2017 WL 5664922, at *3 (6th Cir. Oct. 27, 2017).

Todd brings a failure-to-accommodate claim under the ADA. "An employer discriminates within the meaning of § 12112(a) when it fails to make 'reasonable accommodations to the known physical or mental limitations' of an otherwise qualified employee, unless the employer 'can demonstrate that the accommodation would impose an undue hardship on the operation of the business.'" Hargett, 2017 WL 5664922, at *3 (quoting 42 U.S.C. § 12112(b)(5)(A)). See also Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 868 (6th Cir. 2007). "[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." Kleiber, 485 F.3d at 868. Therefore, to prevail on a failure-to-accommodate claim, a plaintiff must establish that: (1) he is disabled within the meaning of the ADA, (2) he is qualified for the position with or without a reasonable accommodation, (3) his employer knew or had reason to know of his disability, (4) he requested a reasonable accommodation, and (5) his employer failed to accommodate him. Popeck v. Rawlings Co. LLC, 2018 WL 2074198, at *6 (W.D. Ky. May 3, 2018) (citing Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004) (citation omitted)). "An employer may rebut an employee's prima facie case by showing that [his] proposed accommodation (if implemented) would eliminate an essential function of [his] job" or by showing that the proposed accommodation would "impose an undue hardship on its business." Popeck, 2018 WL 2074198, at *6 (citing EEOC v. Ford Motor Co., 782 F.3d 753, 761 (6th Cir. 2015) (explaining that an accommodation that removes an essential function of the position "is per se unreasonable" (citations omitted)); Moore v. Mason

6

County, Kentucky, 2018 WL 4211732, *6 (E.D. Ky. Sept. 4, 2018)(undue hardship).

The second, fourth, and fifth elements of Todd's claim are at issue. Accordingly, the Court will analyze the following questions: (1) whether a patrol round is an essential function of a Covenant security officer assigned to Kimberly Clark, (2) whether Todd is qualified for the position with or without a reasonable accommodation, and (3) whether Covenant engaged in the interactive process to determine whether a reasonable accommodation existed.

**1. Essential Function of Security Position**

A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The first question raised in the present case is whether a patrol round is an essential function of a Covenant security officer assigned to Kimberly Clark.

"A job function is essential if 'its removal would fundamentally alter the position.'" Arredondo v. Howard Miller Clock Co., 2009 WL 2871171, at *5–6 (W.D. Mich. Sept. 2, 2009) (quoting Kiphart v. Saturn Corp., 251 F.3d 573, 584 (6th Cir. 2001)). The EEOC's interpretative guidelines list seven non-exhaustive factors a court should consider when assessing whether a given job duty is "essential": "(1) [t]he employer's judgment as to which functions are essential; (2) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (3) [t]he amount of time spent on the job performing the function; (4) [t]he consequences of not requiring the incumbent to perform the function; (5) [t]he terms of a collective bargaining agreement; (6) [t]he work experience of past incumbents in the job; and/or (7) [t]he current work experience of incumbents in similar jobs." 29 C.F.R. § 1630.2(n)(3)(i)-(vii); see also 42 U.S.C. § 12111(8); Arredondo, 2009 WL 2871171, *5-6 (citing 29 C.F.R. § 1630.2(n)(3)); Popeck, 2018 WL 2074198, at *8. The inquiry into whether a function is essential is highly fact specific and "is

7

typically not suitable for resolution on a motion for summary judgment.'" Jackson v. O'Reilly Auto. Stores, Inc., 2014 WL 993269, at *7 (M.D. Tenn. Mar. 12, 2014) (quoting Keith v. County of Oakland, 703 F.3d 918, 926 (6th Cir. 2013)).

First, what Covenant's practice might have been before adopting the S.A.F.E. Program in February of 2015 is irrelevant. "The ADA does not limit an employer's ability to establish or change the content, nature, or functions of a job." Hennagir v. Utah Dept. Of Corr., 587 F.3d 1255, 1262 (10th Cir. 2009)(internal quotation omitted). "Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." E.E.O.C. v. Picture People, Inc., 684 F.3d 981, 986 (10th Cir. 2012) (internal quotations omitted)). See also EEOC ADA Technical Assistance Manual at II–18 (1992).

Second, the February 26, 2015, email sent from Ryan Stanley establishing the S.A.F.E. Program makes clear that patrol rounds were then made a requirement of the position of security officer. There is evidence in the record that the necessity and the schedule of patrol rounds were determined by both Covenant and Kimberly Clark and that the patrol rounds were implemented to insure safety at the facility. (Feb. 26, 2015, Stanley Email.) Contrary to Todd's implication, the fact that Covenant "made changes to its business . . . is not an impermissible action under the ADA." Milton v. Scrivner, Inc., 53 F.3d 1118, 1124 (10th Cir. 1995).

Third, contrary to Todd's argument, just because Covenant excused him from the mandatory patrol rounds from February 26, 2015 to October 6, 2015, it did not concede that daily patrol rounds are non-essential. "[A]n employer does not concede that a function is non-essential simply because the employer allows an employee to forego performing that function temporarily."

Wagner v. Sherwin-Williams Co., 2015 WL 5174130, at *5 (E.D. Ky. Sept. 2, 2015) (citing Rehrs v. Iams Co., 486 F.3d 353, 358 (8th Cir. 2007)).

Although ordinarily a fact question to be decided on a case-by-case basis, see 29 C.F.R. Pt. 1630, App. § 1630.2(n), Todd has presented no evidence to rebut the conclusion that patrol rounds are essential to the security officer position. For these reasons, the Court finds that patrol rounds are essential to the security officer position and grants summary judgment on that issue.

### 2. Qualified for the Position and Reasonable Accommodation

Having found that patrol rounds are an essential function of the security officer position, the next question in this case is whether on this record a reasonable jury could find that Todd, despite his disability and medical restrictions, was qualified to perform the essential functions of the security officer position with or without a reasonable accommodation at the time Covenant terminated him in October 2015.

Under the ADA regulations, the term "qualified" means "that the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 CFR § 1630.2(m). Todd bears the initial burden of proposing an accommodation and showing that the accommodation would be objectively reasonable. Cowing v. Lockheed Martin Corp., 2017 WL 216702, at *9 (E.D. Ky. Jan. 18, 2017) (citing Kleiber, 485 F.3d at 870). "In order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's known physical limitations." Belasco v. Warrensville Heights City Sch. Dist., 86 F. Supp. 3d 748, 764 (N.D. Ohio), aff'd, 634 Fed. Appx. 507 (6th Cir. 2015) (citing Johnson v. Cleveland City Sch. Dist., 344 Fed. Appx. 104, 112 (6th Cir. 2009)). A reasonable accommodation includes "job restructuring, part-time or modified work

schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "The ADA imposes on employers a duty to reasonably accommodate employees with disabilities unless the employer can demonstrate that doing so would create an undue hardship." Shreve v. City of Romulus, 2018 WL 3428703, *5 (6th Cir. July 16, 2018) (citing Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 201 (6th Cir. 2010)). The Sixth Circuit has held that "[t]he reasonableness of a requested accommodation is generally a question of fact." Keith, 703 F.3d at 927.

Todd asked Covenant to accommodate his disability by permitting him to handle the heavier traffic volume desk the whole shift and his co-worker to handle both the lower traffic volume desk and the patrol rounds. Alternatively, Todd requested that his supervisor, Ryan Stanley, perform the patrol rounds on the second shift as he volunteered to do until his schedule was modified. However, these proposed accommodations would essentially negate the required once daily patrol round assigned to Todd. Thus, if the jury concluded that performance of a daily patrol round was an essential function of the security officer position, these proposed accommodations would be unreasonable given that "'the ADA does not require employers to accommodate individuals by shifting an essential job function onto others.'" Belasco, 86 F. Supp. 3d at 764 (quoting Hoskins v. Oakland County Sheriff's Dep't, 227 F.3d 719, 729 (6th Cir. 2000)); see also 29 C.F.R. § 1630.2(o).

Notwithstanding, the Court finds genuine disputes of material fact regarding whether Todd is a qualified individual with a disability in that he could have performed the essential functions of the job of security officer *with* a reasonable accommodation. Todd requested Covenant provide him with a mobility device and/or permit him to use his own vehicle or a Covenant vehicle to do

the patrol rounds outside of the facility. Covenant represents that the use of a mobility device was rejected by Kimberly Clark for safety reasons. However, Covenant does not provide any evidence from Kimberly Clark that it rejected the use of a mobility device at its plant on the basis of safety concerns or that, if it or Covenant did so, those safety concerns rose to the level of "undue hardship" as defined at 42 U.S.C. § 12111(10). See Miller v. United Parcel Service, Inc., 149 F. Supp. 3d 1262, 1277 (D. Or. 2016).

Instead, citing Answers to Interrogatories verified by Covenant's Human Resource Manager Ashley Dennis, Covenant argues that operating a mobility device in the Kimberly Clark parking lot – an area where there is a heavy volume of large vehicles – is simply not safe. However, the rejection of the mobility device for the external facility patrol is suspect given that Covenant and Kimberly Clark permit security officers and other individuals to walk or patrol the exterior of their facility on foot despite the heavy volume of large vehicles in the parking lot. Furthermore, Covenant's argument that a mobility device is not a workable solution because Todd would still have to get off of the device and walk to several areas to perform the required security/safety checks both inside and outside the facility is likewise suspect. Again, a reasonable jury could believe that since mobility devices come in many different forms, Covenant and Todd could have found a mobility device that would be small, compact, and either permit Todd to stand the entire patrol round or transfer from a sitting to standing position during the patrol rounds. A reasonable jury could likewise believe that Covenant and Todd could have found a mobility device that would limit the speed of the device to that equivalent to an individual briskly walking to allay the risk of the device interfering with manufacturing operations as argued by Covenant. Furthermore, while an employer is not required to eliminate essential functions of a job in order to accommodate a disabled employee, permitting one employee to patrol inside and another employee to patrol

11

outside would not be eliminating an essential function of the job, just restructuring the job. Viewing the evidence in the light most favorable to Todd, Covenant has not presented sufficient evidence to warrant summary judgment on whether providing Todd with an accommodation of a mobility device would be an undue hardship.

Therefore, the Court finds that there is a genuine disputes of material fact as to whether Todd's requested accommodations were reasonable and whether Todd was qualified for the position of security officer pursuant to the ADA.

### 3. Interactive Process

Todd next claims that Covenant did not engage in the "interactive process" necessary to assess the availability of a reasonable accommodation. "The ADA . . . imposes upon employers a duty to engage in an interactive process with the employee." Shreve v. City of Romulus, 2018 WL 3428703, at *5 (6th Cir. July 16, 2018) (citing Rorrer v. City of Stow, 743 F.3d 1025, 1040 (6th Cir. 2014)). "The purpose of the process is to 'determine the appropriate reasonable accommodation for a given employee.'" Shreve, 2018 WL 3428703, at *5 (quoting Kleiber, 485 F.3d at 871.). It should "'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. (quoting Rorrer, 743 F.3d at 1040); see also 29 C.F.R. § 1630.20(o)(3). As recognized by the Sixth Circuit, both parties are required to participate in this process in good faith. Id. "If the employer 'readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff,' it has generally fulfilled its obligation." Id. To prevail on an interactive process claim, a plaintiff must show that: "(1) [he] is qualified for the position, (2) the employer failed 'to participate [in the interactive process in] good faith,' and (3) 'a reasonable accommodation would

have been possible' had the employer participated in the process." Popeck, 2018 WL 2074198, at *8.

Covenant argues that it engaged in the interactive process with Todd required by both the ADA and the KCRA to try to determine if there was some reasonable accommodation that would have allowed him to perform all of the essential functions of his job. In contrast, Todd has presented evidence that he requested a reasonable accommodation in early March to enable him to complete a newly added daily patrol round. The record reflects that Adkisson forwarded the request to Len Welham who temporarily excused Todd from the daily patrol round. The record reflects that Plaintiff submitted a supporting statement regarding his disability in May of 2015. However, no one from the company met with Todd regarding his request for a reasonable accommodation for approximately seven months. Arguably not until Covenant had already hired someone to replace Todd did Adkisson and Dennis meet with Todd to "discuss" reasonable accommodations. There is no evidence that Covenant suggested any alternative reasonable accommodations. Instead, the record reflects that Covenant refused all of the suggested accommodations proposed by Todd.

From the evidence presented, a jury could reasonably find that Covenant did not attempt to entertain Todd's requested accommodations. Likewise, "a factfinder could reasonably conclude that [Covenant] failed to engage in the interactive process in good faith, thereby preventing the parties from discovering and implementing accommodations that might have allowed" Todd to remain as a security officer. Darby v. Gordon Food Servs., Inc., 2015 WL 3622529, at *10 (W.D. Ky. June 9, 2015). Considering the evidence in the light most favorable to Todd, the Court finds that a genuine dispute exists regarding whether Covenant properly engaged in the interactive process as required by the ADA.

### B. Age Discrimination

Todd filed an age discrimination claim pursuant to the Age Discrimination in Employment Act ("ADEA"). However, Todd concedes that he did not comply with the procedural prerequisite to bringing an ADEA claim in federal court – the filing of an administrative charge with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC charge Todd filed had only the disability and the retaliation boxes checked. Furthermore, there is nothing in the factual narrative that demonstrates an intention to advance an age discrimination claim. For these reasons, the Court grants summary judgment in favor of Covenant on Todd's ADEA claim.

### C. Retaliation

The ADA also protects against employer retaliation. See 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). To prevail on a retaliation claim under the ADA, a plaintiff must show that: (1) he engaged in a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). "Having a disability is not a protected activity under the ADA's retaliation provision." Rosier v. TargetX, 2018 WL 1832998, at *3 (D.S.C. Mar. 28, 2018). The record reflects that at the time of his discharge Todd had requested a reasonable accommodation to enable him to perform patrol rounds. The Sixth Circuit has "held that requests for accommodation are protected acts." Hurtt v. Int'l Servs., Inc., 627 Fed. Appx. 414, 422 (6th

Cir. 2015). For purposes of this motion, Covenant concedes that Todd could establish a prima facie retaliation claim and argues that it has offered legitimate reasons for Todd's termination.[1]

If and when a plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual. Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

Covenant represents that Todd's admitted inability to perform the contractually required patrol rounds was the reason for Todd's termination. As it did above, Covenant contends that no reasonable accommodations were available to Todd to enable him to perform his job as a security officer. The Court finds that Covenant has offered a legitimate, non-discriminatory explanation for Covenant's termination. Therefore, the burden shifts back to Todd to prove that this explanation is a mere pretext for retaliation, "i.e., he must prove that [Covenant] in fact fired him because he requested an accommodation." Wagner v. Sherwin-Williams Co., 2015 WL 5174130, at *6 (E.D. Ky. Sept. 2, 2015), aff'd, 647 Fed. Appx. 645 (6th Cir. 2016) (citing Ford Motor, 782 F.3d at 767). "At the summary-judgment stage, the question is simply whether [Todd] has presented enough evidence to allow a reasonable jury to find that." Id.

The Court finds that Todd has failed to raise a genuine issue of material fact regarding whether Covenant terminated him because he requested an accommodation. Instead, the only evidence presented by Todd suggests that at most Covenant terminated Todd because he was disabled – "not because he requested an accommodation for that disability." Wagner, 2015 WL

---

[1] Based on the record, the Court questions whether Todd established a causal connection between the protected activity and the adverse employment action. Since Defendant conceded this issue, the Court will consider the remaining factors.

5174130, at *7. Even if Todd were to argue that he was fired soon after he requested an accommodation, and thus, the timing in this case suggests that his request motivated Covenant's retaliatory action, "the law on this point is gin-clear: temporal proximity alone is simply not enough to allow a reasonable jury to infer pretext." Id. (citing Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012)). Thus, no reasonable jury could find that Covenant discharged Todd because he asked for an accommodation. Covenant is therefore entitled to summary judgment on Todd's retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Covenant Security Services, Inc., for summary judgment [DN 21] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's age discrimination and retaliation claims are dismissed. Plaintiff's ADA reasonable accommodation claim remains.

**IT IS FURTHER ORDERED** that this matter is referred to the Magistrate Judge for a settlement conference.

*Joseph H. McKinley*

Joseph H. McKinley Jr., District Judge
United States District Court

December 12, 2018

cc: counsel of record
    Magistrate Judge H. Brent Brennenstuhl