# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:17CV-00129-JHM

KEVIN K. TODD                                                                                                 PLAINTIFF

V.

COVENANT SECURITY SERVICES, INC.                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a renewed motion by Defendant, Covenant Security Services, Inc., for summary judgment based on newly-discovered evidence [DN 37]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

Plaintiff, Kevin Todd, brought this lawsuit after he was terminated from his position as a security officer at Defendant, Covenant Security Services. On September 1, 2017, Todd filed this current action against Covenant alleging claims of disability-based discrimination pursuant to the Americans with Disabilities Act and the Kentucky Civil Rights Act, age discrimination pursuant to the Age Discrimination in Employment Act, and retaliation. In a Memorandum Opinion and Order issued December 12, 2018 [DN 26], this Court dismissed Plaintiff's claims of age discrimination and retaliation and denied summary judgment as to Plaintiff's ADA reasonable accommodation claim. With respect to the ADA reasonable accommodation claim, the Court found that a patrol round is an essential function of a Covenant security officer assigned to Kimberly Clark. Additionally, the Court found that there are genuine disputes of material fact as to whether Todd's requested accommodations were reasonable, whether Todd was qualified for the position of security officer pursuant to the ADA, and whether Covenant

properly engaged in the interactive process as required by the ADA. Covenant filed a motion to reconsider the portion of the Opinion and Order denying Covenant's summary judgment on the disability-related claims of Todd. The Court denied the motion to reconsider.

Covenant now brings a renewed motion for summary judgment on the ADA claim arguing for the third time that the Court erred in denying summary judgment based on the *original* evidence presented by Covenant. The Court will not revisit its decision with respect to the original evidence presented by Covenant. Covenant also argues that summary judgment is warranted based on statements made in Todd's Social Security Disability Income ("SSDI") claim. Covenant represents that it had requested a complete copy of Todd's SSDI file in 2018, but did not receive the file until March 27, 2019.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-

moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

To prevail on a failure-to-accommodate claim, a plaintiff must establish that: (1) he is disabled within the meaning of the ADA, (2) he is qualified for the position with or without a reasonable accommodation, (3) his employer knew or had reason to know of his disability, (4) he requested a reasonable accommodation, and (5) his employer failed to accommodate him. Popeck v. Rawlings Co. LLC, 2018 WL 2074198, at *6 (W.D. Ky. May 3, 2018) (citing Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004) (citation omitted)). Relying on Todd's SSDI claim file, Covenant contends that Todd cannot satisfy the second requirement—that he is otherwise qualified for the position with or without a reasonable accommodation—because Todd took the legal position with the Social Security Administration in his application for disability benefits that he could not work and made several admissions that would call into question his ability to operate a mobility device to accomplish the essential functions of his job as a security officer. See Mobley v. Miami Valley Hosp., 603 Fed. Appx. 405, 414 (6th Cir. 2015) ("To recover under this theory, [plaintiff] must show that he proposed a reasonable accommodation and would have been reasonably accommodated but for [defendant's] refusal to participate in good faith.").

A "plaintiff's sworn assertion in an application for disability benefits that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case—at least if [he] does not offer a sufficient explanation." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999)). However, an application for disability is not "conclusive evidence that an individual is completely incapable of working." Stallings v. Detroit Pub. Sch., 658 Fed. Appx. 221, 226 (6th Cir. 2016). "[A]n ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim . . . [but] must proffer a sufficient explanation." Id. (quoting Cleveland, 526 U.S. at 806). See also Hargett v. Jefferson Cty. Bd. of Educ., 2017 WL 5664922, at *3 (6th Cir. Oct. 27, 2017). "For instance, an ADA plaintiff can survive summary judgment by explaining that he can perform the essential functions of his position with a reasonable accommodation — a consideration the Social Security Administration's (SSA's) disability determination does not take into account." Stallings, 658 Fed. Appx. at 226 (citing Olds v. United Parcel Serv., Inc., 127 Fed. Appx. 779, 783–84 (6th Cir. 2005)).

Applying the above standard, Todd "must adequately explain why his SSDI claim and award are consistent with his current ADA claim that he was able to perform the essential functions" of his security guard position "with or without reasonable accommodation" in October of 2015. Green v. BakeMark USA, LLC, 683 Fed. Appx. 486, 495 (6th Cir. 2017).

The record indicates that Todd filed an application for disability benefits on October 14, 2015, alleging disability since October 4, 2015, two days before he was terminated from Covenant. (Social Security Administration Decision at 1.) In connection with his application for SSDI benefits, Todd reported that since October 2015,

> [t]he pain in my upper and lower back[1] has gotten so intense, I am unable to work. I cannot keep focus or stay awake when I have taken enough pain meds to control the pain in back. I used to be able to sit for long periods. However I am getting where I cannot sit in one place for long. Then I have to be careful when I get up because the left leg gives out upon standing. Then it can give out when I am walking too.

(Plf.Prod_0512; Plf.Prod_0493.) Additionally, Todd indicated that he takes strong narcotic medications to control the constant pain in his back, including 60 MG of Morphine three times per day, 300 MG of Gabapentin (an anticonvulsant/antiepileptic medication) three times per day, and 10 MG of Flexeril (a muscle relaxer) as needed. (Plf.Prod_0445.) Further, Todd revealed that he had taken morphine and gabapentin at that dosage for at least two years and at a lower dosage prior to 2014. (Plf.Prod_0446 (March 9, 2016 SSDI medical questionnaire).) Todd also noted that over his career he did not inform his employer(s) of these medications out of fear he would be fired. (Plf.Prod_0448.) According to Todd, these medications cause drowsiness and nausea, and make it difficult for him to focus and remain awake at work (Plf.Prod_0446; Plf.Prod_0443; Plf.Prod_0479.) In fact, Todd informed the Social Security Administration that by "2014 my pain condition was effecting my ability meet my employers demands. At times drifting off at work, perform trailer checks (which I could not do) and the ability to work in an office without experiencing increases of pain." (Plf.Prod_0448.) Todd also reported "intense [sciatic] pain" in his "left leg and left hip" that would cause his left leg to give out and him to fall down. (Plf.Prod_0512).

On January 16, 2018, the SSA awarded benefits to Todd finding that Todd had been disabled since October 4, 2015. The Administrative Law Judge, relying on Todd's statements made in the application for disability benefits, found that:

---

[1] Specifically, in answering a question as to what brings on his back pain, Todd reported, "[w]alking more than 20 minutes or 300 feet, sitting no more [than] 30 minutes, or standing more than 20 minutes" as well as "[a]ny physical activity, lifting to [sic] much weight, reaching overhead, or bending over . . ." (Plf.Prod._0445).

5

> [b]y the time consistent with the alleged onset date [October 4, 2015], the record shows that the claimant's back pain was intensifying and that he was in need of strong pain medication to relieve his symptoms. Tenderness in the lumbar spine and thoracic spine was noted, and an abnormal gait was observed. The claimant displayed limited range of motion in the lumber spine during the consultative exam, and the examiner recommended lifting/carrying restrictions. An MRI of the thoracic spine showed a T5 anterior vertebral body wedge compression fracture and thoracic abnormalities have been noted on physical examination. . . .

(Social Security Administration Decision at 5 (internal citations omitted)). Additionally, the ALJ concluded that "it is reasonable his medication regimen would result in side effects, so environmental precautions are in order." (Id.)

These reported disabilities conflict with Todd's claims that he could have continued to work at Covenant with a reasonable accommodation. Todd's statements contained in his SSDI application – that he was unable to work given his back pain, that he uses morphine and other strong prescription drugs to control his back pain, that these drugs cause him to become drowsy, nauseas, and have difficulty staying awake; that he has "passed out" while driving; and that he has fallen down because his left leg has given out on him – render his proposed use of a mobility device and/or his personal vehicle in the Kimberly Clark facility and parking lot unsafe and unreasonable.

Contrary to Todd's argument, the Court will not disregard his statements contained within his SSDI application. Todd, who was represented by counsel, submitted his SSDI application with the express understanding and agreement that all of the information contained in the application is true and correct and that "anyone who knowingly gives a false or misleading statement about a material fact in this information . . . commits a crime and may be sent to prison, or may face other penalties, or both." Thus, Todd made the statements contained within the SSDI application with the full knowledge and understanding that he could face criminal

penalties for making a false statement in connection with his application for SSDI benefits. See also Online SAA Benefits Application Terms of Service at https://secure.ssa.gov ("I understand that . . . any person who knowingly and willfully tries to obtain Social Security benefits falsely could be punished by a fine or imprisonment, or both."). See Chancey v. Fairfield Southern Co., Inc., 949 F. Supp. 2d 1177, 1190 (N.D. Ala. 2013).

Additionally, Todd's argument that he would take other steps to reduce pain in order to limit the use of prescribed medication on those days when he is/was scheduled to work is belied by his admission in his SSDI application. Specifically, Todd admitted that during the time in question, he took morphine and gabapentin and that these medications caused drowsiness and nausea, and made "it difficult for him to focus and remain awake at work." (Plf.Prod_0446; Plf.Prod_0443; Plf.Prod_0479.) Todd also represented that by 2014, his back pain affected his ability to meet his employer's demands and his utilization of significant pain medication caused him to "drift[] off at work." (Plf.Prod_0448.)

In the absence of a sufficient explanation from Todd about his conflicting position taken in his SSDI disability application, the record lacks proof "to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier [disability] statement, the plaintiff could nonetheless 'perform the essential functions' of h[is] job, with or without 'reasonable accommodation.'" Chancey v. Fairfield Southern Co., Inc., 949 F. Supp. 2d 1177, 1190 (N.D. Ala. 2013) (quoting Cleveland, 526 U.S. at 807). See also Stallings, 658 Fed. Appx. at 225. Accordingly, Todd's ADA discrimination claim fails due to his inability to satisfy the qualified individual prong consistent with the Supreme Court's holding in Cleveland. Covenant is entitled to summary judgment.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the renewed motion by Defendant, Covenant Security Services, Inc., for summary judgment based on newly-discovered evidence [DN 37] is **GRANTED**. A judgment will be entered consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

July 31, 2019